# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TARA MARINO,

    Plaintiff,

v.                                                                                            Civ. No. 01-0453   JP/JHG

WAL-MART STORES, INC.

    Defendant.

## MEMORANDUM OPINION AND ORDER

On February 11, 2002, Defendant Wal-Mart Stores, Inc. filed a Motion for Summary Judgment (Doc. No. 45). Having reviewed the parties' arguments and the evidence, I will grant in part and deny in part Defendant's Motion for Summary Judgment (Doc. No. 45).

*Background*

The facts are presented here in the light most favorable to nonmovant, i.e, the Plaintiff. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1189 (2000). In May of 2000 Tara Marino applied for a job with the Wal-Mart Distribution Center (DC) in Los Lunas, New Mexico. The application form asked applicants to list the position for which they would like to be considered, and Marino wrote "management." On June 23, 2000, the top two members of Wal-Mart's personnel department at the DC, Marvin Glass and Dawn Wright, interviewed Marino. Glass and Wright explained to Marino that a training coach[1] position (for which she was best qualified) was not currently available at the Los Lunas DC, but that they may be able to find a placement for her as a training coach at another DC. Marino told her interviewers that she was

---

[1] In the corporate vernacular of Wal-Mart, a coach is a management position.

not interested in relocating to another DC, but that she was interested in any other management jobs at the Los Lunas DC.

On the basis of her initial interview, Marino was called back to interview with two groups of Wal-Mart coaches from the Los Lunas DC on July 12, 2000. Three Wal-Mart coaches made up each group. One coach could not complete his evaluation of Marino because he had to leave the interview early. Of the five coaches who completed evaluations of Marino, four recommended Marino to Leonidus Holbrook, the general manager, who had the authority to hire coaches for the Los Lunas DC.

On July 14, 2000, Holbrook interviewed Marino for a coaching position at the Los Lunas DC. According to Marino, when Holbrook greeted her, he shook her hand and stated "You've impressed a lot of people, and I really am not sure why." During the interview Holbrook told Marino that "he was fully in charge" of the warehouse, where he was known as "Atilla the Hun." Holbrook said that "he wasn't sure if a female like [Marino] could conduct herself properly or could handle a male-dominated situation in a warehouse," like the Los Lunas DC. At some point in their conversation, Holbrook waved his pen up and down, gesturing towards Marino's attire, and said "You won't wear panty hose and high heels and skirts and blouses or such in a job like this, because it is a male-dominated warehouse. You would be wearing jeans, or a warm-up Dickey-type suit."

While talking about Marino's qualifications, Holbrook mentioned a coaching position in the warehouse that involved overseeing the truck drivers arriving and departing the DC. Holbrook explained that the drivers were often irate, and the coach needed good negotiation skills to adapt to a variety of situations and personalities. When Marino asked Holbrook more about

2

that position, Holbrook told her that "he didn't think [Marino] could handle [herself] in a male-dominated situation." Marino felt that Holbrook's comments were intimidating, rude and inappropriate.

Wright informed Marino two days later that she would not be hired. Marino then told Wright that Wal-Mart would be hearing from her attorney. Afterwards, Wal-Mart hired three people to train as coaches and one coach. Three of these new employees were men, and one was a woman.

On March 22, 2001, Marino filed an amended complaint in state court alleging (1) that Wal-Mart failed to hire her because of her sex in violation of Title VII and New Mexico's Human Rights Act, (2) that Wal-Mart was negligent in hiring and retaining Holbrook as a warehouse general manager, (3) that Holbrook intentionally inflicted emotion distress on Marino, and (4) that Wal-Mart was liable for punitive damages because Holbrook's intentional discrimination was extreme and reckless. On April 23, 2001, Defendant removed the suit to federal court.

*The Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the record evidence and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with record evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v.*

3

*Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id.* To withstand a motion for summary judgment, the non-movant must make "specific reference" to record evidence. *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995); D.N.M. LR-Civ. 56.1(b) (placing similar burden on both parties). Unsubstantiated allegations, no matter how true they might be, cannot be considered. *Gross*, 53 F.3d at 1546.

*Title VII Discrimination*

Following the formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), Plaintiff must first establish a prima facie case of discrimination. As the Tenth Circuit has observed, the evidentiary "burden imposed on a plaintiff at the prima facie stage is not onerous." *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1197. Indeed, Plaintiff has met that burden here by demonstrating that she (1) "belongs to a protected class," (2) "applied for and was qualified for a job for which the employer was seeking applicants," (3) "despite being qualified, [she] was rejected," and (4) "after [her] rejection, 'the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications.'" *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802) (internal punctuation omitted).

Defendant attempts to undermine Plaintiff's case at the prima facie stage by arguing that she lacked suitable qualifications for a coaching position. However, "[a]t the prima facie stage, the court need only conclude that the plaintiff has shown through credible evidence . . . that she was minimally qualified for the position she sought." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11 (10th Cir. 1999). Here, Plaintiff has satisfied that requirement by showing

4

that she cleared the first two rounds of interviews with Wal-Mart coaches. Plaintiff has established her prima facie case.

Under the framework of *McDonnell Douglas*, Defendant must now articulate a legitimate non-discriminatory reason for not hiring Plaintiff in order to avoid liability. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191. "Here, Defendant asserts that it did not hire Plaintiff because (a) she was not qualified for a non-training coach position in the warehouse; (b) she was not qualified for the 'training coach plus' position that Mr. Holbrook envisioned; (c) there was no opening for the regular training coach position at the warehouse; (d) she was not willing to relocate to a training coach position at another facility; and (e) Mr. Holbrook concluded that Plaintiff was not sincere, lacked depth in her responses, and was unprofessional in her dress and mannerisms." Def.'s Mem. in Supp. at 8-9.

Faced with Defendant's justifications for not hiring her, Plaintiff must present evidence that Defendant's reasons were "pretextual—i.e. unworthy of belief," to withstand a summary judgment motion. *Kendrick*, 220 F.3d at 1230. As a general rule, Plaintiff must offer evidence that "shows each of the employer's justifications are pretextual." *Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). However, the rule is a flexible one, and once Plaintiff "casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility" on those that remain. *Id*.

As a practical matter Defendant's first three rationales for not hiring Plaintiff can be condensed into one: Plaintiff was unqualified to be anything other than a coach in the training department of the Los Lunas DC. To determine whether Plaintiff was qualified for a coach position outside of the training center, the parties invite the Court to compare Plaintiff's

5

qualifications to those of the persons who were ultimately hired for the positions then available. However, the Court's duty in a discriminatory hiring case is clear: the Court is "not to determine if [a defendant's] hiring decisions were wise or fair, but rather, in the context of [plaintiff's] disparate treatment claim, if those decisions were motivated by discriminatory animus." *Bullington*, 186 F.3d at 1318 n.14.[2]

Here, the Court does not need to enter the debate about who had the better qualifications for the job—Plaintiff or the employees Wal-Mart hired. Plaintiff has furnished evidence that Holbrook was concerned not about Plaintiff's qualifications to fulfill a coaching position inside the warehouse, but rather her ability, as a female, to work in the male-dominated environment at the Los Lunas DC. If Plaintiff is to believed, Holbrook's statements present strong circumstantial evidence of pretext—that Defendant's assertion that Plaintiff was unqualified for a warehouse coaching position is unworthy of belief. Unlike the employer's discriminatory statements in other reported cases, *i.e.*, *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1210 (10th Cir.1999), Holbrook's discriminatory statements, made to and about Plaintiff at the hiring interview, have a direct nexus with his decision not to hire Plaintiff. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000) (noting that when faced with discriminatory statements, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence"). Determining whether Holbrook actually made the statements and/or interpreting the context within which they were made are "jury functions, not

---

[2] The task of determining whether Plaintiff lacked the minimum qualifications for a given position at the DC would have been easy had Defendant simply informed the court of the qualifications for that position. *E.g. Bullington*, 186 F.3d at 1308 (providing the minimum qualifications for the position at issue); *Sanchez v. Phillip Morris Inc.*, 992 F.2d 244, 245 (10th Cir. 1993) (same).

6

those of a judge." *Anderson*, 477 U.S. at 255.

The other reasons that the Defendant cites for not hiring the Plaintiff also present contested issues of fact. For example, Defendant has pointed out that the Plaintiff was unwilling to relocate. However, the record suggests that the Defendant was aware of Plaintiff's unwillingness to move early in the interview process, yet continued to consider her for employment. The validity of the Defendant's reliance on this factor as a reason for not hiring the Plaintiff is therefore a question appropriately left for a jury. Likewise, the genuineness of Holbrook's perception that Plaintiff "was not sincere, lacked depth in her responses, and was unprofessional in her dress and mannerisms," is subject to dispute. Because Plaintiff has established evidence of a prima facie case and evidence of pretext going to Defendant's justifications for not hiring her, summary judgment is inappropriate.[3]

*The New Mexico Human Rights Act*

---

[3] The parties both devote substantial attention to the Tenth Circuit's opinion in *Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174 (10th Cir. 2000). However, the portion of *Kelley* discussed by the parties concerns the requirements for using statistical evidence to establish a disparate impact case. Given that this Court does not read Plaintiff's complaint to assert a claim of disparate impact discrimination, *Kelley* does not appear to be relevant to the Court's decision.

In addition to her argument regarding inferential discrimination under the *McDonnell Douglas* analysis, Plaintiff argues that Holbrook's statements constitute direct evidence of sex discrimination that would place the case within the framework of *Price Waterhouse*. Pl.'s Resp. at 9. Plaintiff may very well be right. *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1512 (10th Cir. 1997) ("A plaintiff will be entitled to the burden-shifting analysis set out in *Price Waterhouse* upon presenting 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude.'") (internal quotation altered to reflect the original in *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992)). The Court will leave the question of whether Plaintiff has satisfied her burden of producing direct evidence of discrimination for the trial judge to decide, once all of Plaintiff's evidence of discrimination has been presented. *Id.* However, should the Plaintiff be able to show such evidence, the burden would shift to the Defendant to prove that despite an illegitimate consideration of Plaintiff's gender, Holbrook still would not have hired Plaintiff.

The parties do not argue that Plaintiff's state law claim under the Human Rights Act, NMSA 1978, § 28-1-7 (2001) should be treated any differently than Plaintiff's Title VII claim. Thus, for the reasons outlined above, Plaintiff's claim under the Human Rights Act withstands summary judgment.

*Negligent Hire & Retention*

Plaintiff concedes that summary judgment should be granted on her claim that Wal-Mart negligently hired and retained Holbrook as a general manager.

*Intentional Infliction of Emotional Distress*

To qualify for this state law tort, Plaintiff must demonstrate that Holbrook "intentionally or recklessly cause[d] severe emotional distress through extreme and outrageous conduct." *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004, ¶ 18, 124 N.M. 613, 954 P.2d 45. Even if, as alleged, Holbrook's conduct exceeded the bounds of common decency, it was certainly not so severe that the reasonable person would be "unable to cope adequately with the mental distress caused by the circumstances." *Jaynes*, 1998-NMSC-004, ¶ 20. Therefore, the Court will grant summary judgment on Plaintiff's allegation of intentional infliction of emotional distress.

*Punitive Damages*

The Court at this time will defer ruling on the question of whether the Plaintiff has produced sufficient evidence to support a claim for punitive damages. The Court will decide this issue at a later time, either after further pretrial consideration of the Defendant's Motion for Summary Judgment, or during trial after the Plaintiff has presented all of the evidence in her case in chief.

IT IS THEREFORE ORDERED that Defendant's motion for Summary Judgment (Doc. No. 45) is GRANTED on Plaintiff's claims of (1) negligent hire and supervision, and (2) intentional infliction of emotional distress, and is DENIED on (1) Plaintiff's claims of Title VII disparate treatment, and (2) violations of the New Mexico Human Rights Act; and a decision is deferred on Plaintiff's claim for punitive damages.

_____
CHIEF JUDGE UNITED STATES DISTRICT JUDGE